STATE of Minnesota, Appellant,

v.

Andrew Joe NIELSEN, Respondent.

No. C7–94–2273.

Court of Appeals of Minnesota.

April 11, 1995.

Review Denied June 14, 1995.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Richard M. Arney, Washington County Atty., Nancy C. Nelson, Asst. County Atty., Stillwater, for appellant.

Harlan P. Klein, West St. Paul, for respondent.

Considered and decided by KALITOWSKI, P.J., SHORT and MULALLY,* JJ.

## OPINION

SHORT, Judge.

On appeal from a pretrial order suppressing the results of a blood alcohol test in a criminal prosecution for driving while under the influence, the state argues the trooper had no obligation to read the implied consent advisory and test results are admissible.

## FACTS

Andrew Joe Nielsen was involved in a one-car accident in the early morning hours of March 17, 1994. Nielsen was traveling westbound on Highway 10 in Washington County when he lost control of his car on a curve, went off the road, and struck a rock wall embankment. Nielsen and his passenger were taken by ambulance to a hospital. At 2:15 a.m., a state trooper was called to the accident site. During his investigation, the trooper discovered Nielsen had a 1993 con-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 2.

viction for driving under the influence of alcohol.

The trooper went to the hospital to continue the investigation. While speaking with Nielsen at the hospital, the trooper smelled alcohol on Nielsen's breath, observed Nielsen's eyes were "glassy, glazed, and bloodshot," and noticed Nielsen spoke with a "thick tongue." Based on his training and experience, the trooper concluded Nielsen was under the influence of alcohol.

The trooper asked Nielsen to provide a blood sample. Believing he had no choice, Nielsen agreed. The extraction was made in a medically-acceptable manner at the hospital. The trooper did not read Nielsen his rights or invoke the civil implied consent statute, Minn.Stat. § 169.123. Because their injuries were minor, Nielsen and his passenger were released from the hospital. No ticket or tab charge was issued.

When the chemical analysis of Nielsen's blood sample revealed a .16 reading, the case was submitted to the prosecutor for formal gross misdemeanor driving charges. Nielsen retained his driver's license pending trial. At a pretrial hearing, Nielsen moved to suppress evidence of the blood alcohol test as violative of his constitutional right to counsel. The trial court granted Nielsen's motion.

## ISSUE

Is extraction of blood in a criminal proceeding for driving under the influence a "critical stage" as defined by *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828 (Minn.1991)?

## ANALYSIS

 Where facts are not in dispute and the trial court's pretrial order is purely a legal determination, we review de novo whether suppression is necessary. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992). A trial court's pretrial exclusion of evidence in a criminal prosecution will be reversed only if the state demonstrates clearly and unequivocally that (1) the trial court erred in its judgment, and (2) the error will have a critical impact on the outcome of the trial unless it is reversed. *State v. Joon Kyu*

*Kim*, 398 N.W.2d 544, 547 (Minn.1987). Critical impact is shown not only in those cases where a lack of the suppressed evidence completely destroys the state's case, but also in cases where it significantly reduces the likelihood of a successful prosecution. *State v. Ronnebaum*, 449 N.W.2d 722, 724 (Minn.1990).

 Taking a blood sample to test for alcohol concentration is a search for, and seizure of physical evidence, subject to both the Minnesota and federal constitutions. U.S. Const. Amend. IV; Minn. Const. art. I, § 10. When a police officer has probable cause to believe the driver has committed the offense of driving under the influence and removal of blood is necessary to preserve evidence, the police officer may order a blood sample taken without a warrant and without the driver's consent. *South Dakota v. Neville*, 459 U.S. 553, 558–64, 103 S.Ct. 916, 920–23, 74 L.Ed.2d 748 (1983); *Tyler v. Commissioner of Pub. Safety*, 368 N.W.2d 275, 278 (Minn.1985); *State v. Schauer*, 501 N.W.2d 673, 675 (Minn.App.1993).

 Nielsen agrees the trooper had probable cause to believe he committed the offense of driving under the influence because Nielsen demonstrated symptoms of intoxication. Although Nielsen argues the trooper arbitrarily decided not to read him the implied consent advisory, the trooper said he did not do so because Nielsen was involved in a one-car accident in which a passenger was injured. *See State v. Speak*, 339 N.W.2d 741, 745 (Minn.1983) (finding probable cause that defendant committed criminal negligence and that a breath test will provide evidence to support prosecution from the facts that driver smelled of alcohol, was involved in a fatal accident, and told conflicting stories). Nielsen also admits evidence of intoxication dissipates rapidly. *See, e.g., State v. Oevering*, 268 N.W,2d 68, 74 (Minn.1978). Thus, the trooper was justified in requiring Nielsen to submit to blood testing. Because the means and procedures employed to extract the blood sample respected relevant Fourth Amendment standards of reasonableness, the only issue before us is whether by failing to invoke the implied consent statute the trooper violated Nielsen's constitutional right to

counsel. *See Friedman,* 473 N.W.2d at 835 (holding the Minnesota Constitution guarantees a person a limited right to consult with an attorney before submitting to chemical testing compelled by implied consent law).

▆▆▆ Evidence of chemical testing is admissible in a criminal prosecution even if a police officer makes no attempt to read the suspect the implied consent advisory. *Tyler,* 368 N.W.2d at 281; *Schauer,* 501 N.W.2d at 676–77; *State v. Scott,* 473 N.W.2d 375, 377 (Minn.App.1991). Despite that case law, Nielsen argues the testing was done at a "critical stage" which triggers his constitutional right to counsel under *Friedman,* 473 N.W.2d at 835. The right to counsel, however, does not attach until the commencement of formal judicial proceedings, or until the driver faces a critical decision regarding chemical testing. *See Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (right to counsel attaches when adversarial judicial criminal proceedings have begun); *Friedman,* 473 N.W.2d at 833 (right to counsel attaches in pretrial procedures that might impair accused's defense on the merits). The process of chemical testing in this case was merely an investigatory stage which necessarily preceded the decision to prosecute. *See Friedman,* 473 N.W.2d at 833 (a ticket or tab charge, usually issued after the test is performed, is the equivalent of a formal complaint).

Nielsen faced no immediate revocation of his driver's license if he refused to take the blood test or failed the blood test. Minn. Stat. § 169.123, subd. 4 (Supp.1993). He faced no penalties for refusing to submit to testing under Minn.Stat. § 169.121, subd. 1a (1992). Nielsen faces the traditional penalties for driving under the influence, and imposition of those penalties only after a jury trial at which he has the right to counsel. *See* Minn.Stat. § 169.121, subds. 3, 4 (1992 & Supp.1993) (penalties for DWI).

The right to counsel attached in *Friedman* because the implied consent law reclassified a traditional criminal offense as a civil offense, and immediately imposed severe sanctions before a jury trial and without benefit of counsel. 473 N.W.2d at 832–37. The right to counsel under the Minnesota Consti-

tution attaches only in "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Id.* at 833 (quoting *Gerstein v. Pugh,* 420 U.S. 103, 122, 95 S.Ct. 854, 867, 43 L.Ed.2d 54 (1975)). Nielsen's defense is not impaired if he is required to submit to testing without counsel because he has no choice to refuse testing and the penalties are no greater if he refuses to submit to testing. *See State v. Condon,* 497 N.W.2d 272, 275 (Minn.App.1993) (because officer had probable cause to believe driver had committed criminal vehicular operation, driver had no right to refuse testing, and therefore had neither a need nor a right to contact counsel).

Our decision that the Sixth Amendment right to counsel does not attach to the investigatory stage of chemical testing in a criminal prosecution is consistent with foreign decisions involving the right to counsel under the federal constitution. *Cf. Schmerber v. California,* 384 U.S. 757, 765–66, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966) (rejecting right to counsel claim); *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685, 693 (1971) (because driver had no right to refuse test, attorney's ability to assist driver was not in issue); *State v. Cichowski,* 203 Conn. 97, 523 A.2d 503, 506 (1987) (right to counsel applies only when government's role shifts from investigation to accusation); *State v. Spence,* 418 So.2d 583, 586–87 (La.1982) (allowing suspect to delay blood tests until after consultation with lawyer would defeat statute's effect to conduct prompt test); *State v. Monk,* 528 So.2d 173, 175 (La.Ct.App.1988) (same); *State v. Jones,* 457 A.2d 1116, 1121 (Me.1983) (noting drivers have only the power, not the right, to revoke implied consent to testing); *Holmberg v. 54–A Judicial Dist. Judge,* 60 Mich.App. 757, 231 N.W.2d 543, 544 (1975) (no federal constitutional right to counsel); *Spradling v. Deimeke,* 528 S.W.2d 759, 763–64 (Mo.1975) (no constitutional right to counsel only a statutory right); *State v. Petkus,* 110 N.H. 394, 269 A.2d 123, 125 (1970) (decision whether to give blood or refuse was not "lawyer's decision" requiring access to counsel under Sixth Amendment), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1522, 28

L.Ed.2d 867 (1971); *Seders v. Powell,* 298 N.C. 453, 259 S.E.2d 544, 550–51 (1979) (finding no constitutional right to confer with an attorney before voiding statutorily-implied consent); *McNulty v. Curry,* 42 Ohio St.2d 341, 328 N.E.2d 798, 801–02 (1975) (there is no constitutional right to refuse the test and decision whether to do so is not a "critical stage"); *Law v. Danville,* 212 Va. 702, 187 S.E.2d 197, 198 (1972) (taking of a blood sample is only a "preparatory step"); *see generally,* Lisa M. Wiencke, Note, *Invoking the State Constitution to Invalidate Legislation: Who's Guarding the Guardians?,* 18 William Mitchell L.Rev. 1073, 1086–91 (1992) (discussing right to counsel under Minnesota and United States Constitutions).

### DECISION

The trooper was justified in requiring Nielsen to submit to blood testing. The means and procedures employed to extract the blood sample were consistent with Nielsen's Fourth Amendment rights. The Sixth Amendment right to counsel does not attach to the chemical testing stage of a criminal prosecution for driving under the influence. Under these circumstances, the trial court erred by suppressing evidence of the results of blood testing.

**Reversed and remanded.**